IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMES SWEET, an individual, and ASTANZA DESIGN LLC, a Colorado limited liability company,<br><br>Plaintiffs,<br>v.<br><br>CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah Corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>2:16-cv-225<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

This case stems from efforts by the Church of Jesus Christ of Latter-day Saints to furnish temples in San Salvador and Rome. Before the court is Defendant's Motion for Summary Judgment on Plaintiffs' claims of unjust enrichment and intentional interference with economic relations.[1] Plaintiffs do not oppose dismissal of their unjust enrichment claim,[2] and on that basis the court dismisses it with prejudice. For the reasons given below, the court GRANTS Defendant's Motion and dismisses Plaintiffs' remaining claim of intentional interference with economic relations.

---

[1] Dkt. 46 at 2.

[2] Dkt. 48 at 3 n.1.

# FACTS[3]

Plaintiff James Sweet and his wife own Plaintiff Astanza Design, LLC, an international, strategic interior design and global sourcing firm specializing in commercial projects worldwide.[4]

Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints (CPB) hired Gloria Kummer to source furniture for new temples in San Salvador and Rome.[5] In late 2008, Kummer phoned James Sweet and asked about his relationships with furniture manufacturers in Honduras and Italy.[6] This conversation led to more contacts and events whereby in early 2009, Sweet introduced Kummer to three foreign furniture manufacturers: Caoba de Honduras, Artesanos, and Gimme doing business as Francesco Molon.[7]

On January 1, 2009, Sweet entered into a representation agreement with Caoba de Honduras.[8] That agreement designated Sweet as the exclusive, worldwide sales representative for all Caoba de Honduras products and services sold or distributed to the LDS Church.[9] It also entitled Sweet to a commission fee for its services.[10] On February 21, 2011, Sweet entered into a representation agreement with Francesco Molon with exclusivity and commission terms similar to those of the Caoba Representation Agreement.[11]

---

[3] At the summary judgment stage, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *McGehee v. Forest Oil Corp.*, 908 F.3d 619, 624 (10th Cir. 2018).

[4] Dkt. 48, Ex. 23, at ¶ 4. For brevity, the court refers to Sweet and Astanza collectively as "Sweet."

[5] *Id.* at ¶ 7.

[6] *Id.*

[7] *Id.* at ¶ 8.

[8] Dkt. 48, Ex. 23, sub-Ex. B.

[9] *Id.*

[10] *Id.*

[11] Dkt. 48, Ex. 23, sub-Ex. A.

Sweet's business relationships thrived for a few years.[12] From 2009 to late 2012, Caoba de Honduras and Francesco Molon paid Sweet commissions on sales each made to CPB.[13] With CPB's selection of Francesco Molon as a primary supplier of furnishings for the Rome Temple, Sweet's business appeared poised for growth.[14] But CPB's introduction of a new manager, Dave Finlinson, altered the trajectory of Sweet's business.[15]

Finlinson pressured Francesco Molon to lower its prices.[16] Finlinson offered more business in exchange for better pricing and related concessions.[17] One of those concessions was the elimination of Sweet as Francesco Molon's exclusive worldwide representative for LDS church purchases.[18] Finlinson threatened that, unless Francesco Molon eliminated Sweet, CPB would not purchase any furniture from Francesco Molon for its Rome Temple.[19] Succumbing to Finlinson's pressure, Francesco Molon eliminated Sweet and stopped paying Sweet its commission fee.[20] Similarly, CPB persuaded Caoba de Honduras to eliminate Sweet as its exclusive worldwide representative for LDS church purchases.[21] In response to CPB's interference, Sweet brought suit against CPB for (1) unjust enrichment and (2) intentional interference with economic relations.[22]

---

[12] *See* Dkt. 48, Ex. 23, at ¶¶ 17–23.

[13] *See id.*

[14] *See id.* at ¶ 24.

[15] *See id.* at ¶¶ 26–62.

[16] *Id.* at ¶ 28.

[17] *Id.* at ¶ 35.

[18] *Id.* at ¶¶ 38, 43.

[19] *Id.* at ¶ 39.

[20] *Id.* at ¶¶ 41, 50–51.

[21] *Id.* at ¶ 60.

[22] Dkt. 6.

## LEGAL STANDARD

The court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "A material fact is one that might affect the outcome of the suit under the governing law . . . and a genuine issue is one for which the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[24] When applying this standard, courts "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."[25]

"While the party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact, the moving party need not negate the nonmovant's claim, but need only point out to the district court that there is an absence of evidence to support the nonmoving party's case."[26] "If the moving party carries this initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials of his pleading . . . but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."[27]

## ANALYSIS

To succeed on a claim of intentional interference with economic relations, a "plaintiff must prove (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) for an improper purpose or by improper means, (3) causing injury to the

---

[23] Fed. R. Civ. P. 56(a).

[24] *Pelt v. Utah,* 539 F.3d 1271, 1280 (10th Cir. 2008) (citations and internal quotation marks omitted).

[25] *McGehee*, 908 F.3d at 624.

[26] *Universal Money Centers, Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (internal quotation marks omitted).

[27] *Id.* (internal citations and quotation marks omitted).

4

plaintiff."[28] With respect to the third element, a "plaintiff is required to prove both the fact of damages and the amount of damages."[29] "To prove the amount of damages, [a] plaintiff must produce evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages."[30] Conjecture, such as legal conclusions in an affidavit, will not suffice.[31] Rather a plaintiff must supply "supporting evidence from which the factfinder may derive a reasonable estimate of the amount of damages."[32]

To recover damages in the form of lost profits, a Utah plaintiff must prove net loss.[33] "Net profits are determined by computing the difference between the gross profits and the expenses that would be incurred in acquiring such profits."[34] "[R]easonable certainty requires more than a mere estimate of net profits. In addition to proof of gross profits, there must generally be supporting evidence of overhead expenses, or other costs of producing income from which a net figure can be derived."[35]

Sweet does not supply evidence of its net loss. Although it produces evidence of lost gross revenue, it does not supply evidence of the costs it would have incurred in acquiring that revenue. In his Declaration, Plaintiff James Sweet states,

> With respect to costs, because I worked out of my home, I had no incremental costs associated with rent, utilities, office phone, cell phone, internet and equipment costs associated with Giemme and Caoba business. Although there were costs for travel specific to the LDS Church or

---

[28] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 13, 345 P.3d 553 (emphasis in original removed).

[29] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2013 UT App 146, ¶ 13, 305 P.3d 171.

[30] *Id.* (internal quotation marks omitted).

[31] *See id.* (citing *Stevens-Henager Coll. v. Eagle Gate Coll.*, 2011 UT App 37, ¶ 29, 248 P.3d 1025).

[32] *Id.*

[33] *Id.* at ¶ 14.

[34] *Id.* (citing *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986) (per curiam)).

[35] *Id.* (citing *Sawyers*, 722 P.2d at 774).

5

> proportioned if the travel includes other business purposes, those costs were *de minimus*. The above stated costs have been included in my projections.[36]

In its briefing, Sweet concludes a deduction for costs is unnecessary because James Sweet's "primary investment in the Giemme and Caoba business was his time."[37] Sweet nevertheless advances two alternative, if not inconsistent, arguments that it has satisfied its burden to produce evidence of net loss damages. Sweet first seeks to satisfy its evidentiary burden with conclusory testimony that it accounted for an unspecified amount of costs in James Sweet's damage's projections. Short of that, Sweet seeks to avail itself to a *de minimus* exception to the rule requiring evidence of costs. Both arguments fail.

Sweet's first argument fails because Sweet identifies no record evidence to substantiate James Sweet's conclusory testimony—for example, it nowhere supplies the cost figures necessary to identify (let alone substantiate) the unspecified costs James Sweet testifies he included in his projections[38]—and mere conclusory testimony is insufficient to create a genuine issue of fact.[39] Sweet's second argument fails because it provides no legal authority for the existence in Utah law of a *de minimus* exception to the net loss damages proof requirement, and this failure alone defeats any attempt to invoke that doctrine. Further, even if such an exception existed, Sweet fails to provide the evidence necessary—i.e., cost figures or reasonable estimates—for a factfinder to determine whether such costs were *de minimus*.

Sweet's failure to identify these costs or provide reasonable estimates would deprive CPB of any meaningful opportunity to challenge Sweet's conclusions through cross-examination at

---

[36] Dkt. 48, Ex. 23 at ¶ 91; *see also id.* at ¶ 128 ("subtracting relevant costs" without specifying a cost figure).

[37] Dkt. 48 at 71.

[38] Dkt. 58.

[39] *Stevens-Henager Coll.*, 2011 UT App 37, ¶ 33.

trial. The evidence in this case when viewed in the light most favorable to Sweet suggests Sweet's operating costs were small.[40] However, inviting a jury on this record to place a figure on these costs would require the very speculation disallowed by Utah law.[41] Sweet's failure to supply sufficient evidence of its costs is fatal to its claim at summary judgment under any of its alternative arguments.

## CONCLUSION

For the reasons explained above,[42] the court GRANTS Defendant's Motion for Summary Judgment. The Clerk of Court is directed to close the case.

SO ORDERED this 27th day of March, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[40] Sweet's costs appear to include at least some portion the costs for international travel, business lunches, technology upgrades and services, and legal services. *See* Dkt. 48, Ex. 23, at ¶¶ 11, 32, 72, 91.

[41] *Sunridge*, 2013 UT App 146, ¶ 30 (holding "unsubstantiated conclusions as to the lost profits" do not create a genuine dispute of material fact); *Sawyers*, 722 P.2d at 775 ("Plaintiffs here presented evidence on gross profit losses only. Their failure to place before the court financial summaries, monthly sales volume breakdowns, costs of sales expenses, or any other overhead expenses from which the trial court could reasonably have calculated plaintiff's lost net profit is fatal to their claim.").

[42] In view of the damages failure of proof, the court does not reach the other arguments advanced by CPB concerning improper means and expert testimony. *See* Dkt. 46 at 17–21, 24–25.